## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PATRICIA A. BITLER,                        )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )          Case No. 19-2188-KHV-GEB
                                           )
AMERICAN MEDICAL SYSTEMS, INC.,            )
et al.,                                    )
                                           )
                    Defendant.             )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion to quash the subpoenas issued by Plaintiff to two former employees, Matt Adams and Kristy Entenman (**ECF No. 29**). On June 16, 2020, the Court held oral arguments on the motion. Plaintiff appeared through counsel, Jeffrey M. Kuntz and Stephen J. Torline. Defendants appeared through counsel, Shana E. Russo and Jennifer A. Eppensteiner. After review of the parties' briefing and considering the arguments of counsel, the Defendants' Motion was **DENIED** by oral ruling at the conclusion of the hearing. This written opinion memorializes that ruling.

## I.    Background[1]

This is a personal injury product liability, breach of warranty, and Kansas Consumer Protection Act ("KCPA") action which was removed to the federal court on April 12, 2019.  Plaintiff Patricia Bitler alleges on June 8, 2011 she was implanted with a Monarc subfascial hammock ("pelvic mesh" or "sling"), a medical device designed to treat women who suffer from stress urinary incontinence. She further claims she suffered serious bodily injury as a result of the Monarc implant.

Plaintiff filed this case against nine original defendants; but two of those defendants were dismissed. (Order, ECF No. 9.)  The remaining seven defendants include two primary groups: 1) the "Astora" Defendants (Astora Women's Health LLC; Astora Women's Health, Inc.; Astora Women's Health Holdings, LLC; Astora Holdings, LLC), and 2) the "American Medical Systems" ("AMS") Defendants (American Medical Systems, Inc.; American Medical Systems, LLC; and American Medical Systems Holdings, Inc.). During the initial August 2, 2019 scheduling conference, the undersigned U.S. Magistrate Judge discussed with counsel that the answer and corporate disclosure statement showed Astora Women's Health LLC as the only proper defendant because the other defendants have either merged with Astora Women's Health LLC or dissolved. (*See* Answer, ECF No. 10; Disclosure, ECF No. 7.)  Counsel were to confer about dismissing the extra defendants or amending the complaint; however, this has not yet

[1] The information recited in this section is taken from the pleadings (Notice of Removal, ECF No. 1; Answer, ECF No. 10) and the briefs regarding Defendants' Motion to Quash (ECF Nos. 29, 30, 32, 35).  This background information should not be construed as judicial findings or factual determinations.

occurred and no other Defendant aside from Astora Women's Health LLC has answered or otherwise responded to the Complaint.[2]

The scope and breadth of discovery in this case has been a topic of discussion since the scheduling conference.[3] Defendants contend "general merits discovery related to all Defendants" occurred in *In re: American Medical Systems, Inc. Pelvic Repair Systems Products Liability Litigation*, MDL No. 2325, in the United States District Court, Southern District of West Virginia (the "MDL").[4] The West Virginia court closed the MDL, in part, because company discovery regarding Defendants had been completed and cases in the MDL were ready for remand.[5] Following the closure of the MDL and remand of those cases, any new claims were required to be filed in district courts, which is precisely what occurred in this case.

Defendants stated during the scheduling conference they planned to produce "general discovery" about Defendants including records and depositions from the MDL. Plaintiff agreed to this plan but noted she had not yet reviewed this information and wished to reserve the right to conduct limited additional discovery as needed beyond what was previously completed in the MDL.  The Court did not preclude the exchange of

---

[2] The August 5, 2019 scheduling conference was not recorded; the information contained here is contained in chambers' notes.   The June 16, 2020 motion conference was recorded by Zoom videoconference, and Defendants requested a transcript from the court reporter. (*See* Transcript, ECF No. 55.)  The issue of whether the appropriate Defendants are named in this matter and have answered properly was again addressed by the Court during the June 16 hearing, and both parties agreed to review the docket.

[3] The Report of Parties' Planning Conference (dated July 19, 2019) contained the parties' differing positions on whether additional limited discovery should occur outside the MDL materials.  The Planning Report is maintained in the Chambers file.

[4] Planning Report (maintained in Chambers file).

[5] *Id*. at Ex. A (MDL Pretrial Order, ECF No. 256) (maintained in Chambers file).

any discovery but encouraged counsel to reach out to the undersigned in the event a dispute arose.

Aside from the instant motion, discovery is apparently progressing as scheduled. The initial Scheduling Order (ECF No. 17) included three phases:  Phase I was the "fact gathering" phase and included written discovery and the depositions of fact witnesses; Phase II included expert discovery and mediation; and Phase III included the pretrial conference, dispositive motions, and trial.  During the COVID-19 pandemic, the parties sought to extend deadlines. (Joint Motion, ECF No. 33.)  Fact discovery in Phase I was extended to June 26, 2020, with expert discovery in Phase II closing by January 29, 2021. (Order, ECF No. 34).  Phase III included a pretrial conference in February 2021 and trial in December 2021.  (*Id*.)  During the June 16, 2020 motion conference, the Court further extended the close of Phase I fact discovery to August 7, 2020, with all other deadlines remaining as previously scheduled. (*See* Order, ECF No. 43.)

## II.     Motion to Quash Subpoenas (ECF No. 29)

On February 7, 2020, Plaintiff served Notices of its intent to depose three former employees of defendant AMS: Matt Adams, Pam Newcome, and Kristy Entenman.[6] Following filing of the notices, each of the three former employees were served with subpoenas for their testimony. (Mot., ECF No. 29 at n.1.)  After conferral between counsel, Plaintiff agreed to withdraw the subpoena to Pam Newcome.  However, after

---

[6] ECF Nos. 22, 23, 24.

conferring as required by D. Kan. Rule 37.2,[7] the parties could not resolve their disagreements regarding the other two subpoenas, leading to the instant motion.

### A.    Request at Issue

The items each deponent was asked to bring to the depositions are identical in each notice of deposition: 1) a resume/CV; 2) personnel file; 3) all documents regarding stress urinary incontinence and pelvic organ prolapse products in the deponent's possession; 4) all such related documents, notes, videos, etc. posted on social media; and 5) any consulting agreements or contracts between the deponents and Defendants. (*See* Notices, ECF No. 22-1; 24-1.)

### B.    Positions of the Parties

#### 1.    Defendants' Arguments[8]

Defendants claim the deposition requests are duplicative, overbroad, and unduly burdensome.  They assert three primary arguments:  1) Defendants—through production of the MDL materials—already provided Plaintiff with the discovery she is requesting; 2) discovery on topics that far post-date Plaintiff's 2011 implant are neither relevant nor admissible; and 3) these particular witnesses cannot provide her with the discovery she desires.  Defendants essentially rely on their scheduling conference position that "AMS has produced over 14.1 million pages of electronically stored information in the MDL and approximately 83 witnesses were deposed," and any additional discovery is too much.  (Mem. Supp., ECF No. 30 at 1.)  Defendants contend Plaintiff has not identified

---

[7] *See* Def.'s Certif. of Counsel, ECF No. 29-1.
[8] Unless otherwise specified, Defendants' arguments are taken from their Motion (ECF No. 29), Memorandum in Support (ECF No. 30) and Reply (ECF No. 35.)

any topics which were not previously covered by multiple depositions in the MDL, and Plaintiff's proposed line of questioning focuses on events that happened at the company years after Plaintiff's implant, making the information irrelevant.

Regarding Mr. Adams, he worked at AMS in Research and Development and Clinical Research until he left the company on June 21, 2013. (Adams Dep., Ex. C to ECF No. 30.)  He has not worked or consulted with AMS since June 2013.  Defendant notes Adams was deposed in the MDL, his deposition is available to Plaintiff, and there is no new evidence available from this witness. Defendant argues courts generally disfavor repeat depositions.[9]  And, information from Adams regarding what happened at the company years after Plaintiff's implant is irrelevant.

As for Ms. Entenman, she was employed by AMS from June 2007 to August 2015 and held different roles within the marketing department throughout her employment. (Entenman Decl., Ex. D to ECF No. 35.) She did not have any responsibility for either the Monarc device or any stress urinary incontinence products generally. She has not been previously deposed, but even so, Defendants contend any information she could provide would be irrelevant.  Defendants argue Plaintiff failed to articulate what topics she would like to cover with Entenman and she did not work on the Monarc product. Defendant already provided Plaintiff with more than a dozen deposition transcripts from 10 different employees, some of whom were Fed. R. Civ. P. 30(b)(6) witnesses who

_____

[9] Def.'s Mem., ECF No. 30 at 4, citing Fed. R. Civ. P. 30(a)(2)(A)(ii); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2019 WL 3532062, at *2 (D. Kan. Aug. 2, 2019); also *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996) (citations omitted).

spoke specifically to the Monarc device.  Defendant argues Plaintiff declined to review an additional 46 deposition transcripts with relevant testimony after Defendant provided Plaintiff with a list of those depositions.  Yet Plaintiff still seeks the deposition of a former employee with no direct involvement on the Monarc device.

Defendants contend "discovery must be limited where the discovery sought is duplicative and the burden of the proposed discovery outweighs its likely benefit, as is the case here." (ECF No. 30 at 2, citing Fed. R. Civ. P. 26(b)(2)(C).)  Defendants argue "within the MDL, thousands of Plaintiffs had the Monarc device implanted, and over 160 MDL Plaintiffs were residents of Plaintiff's home state, Kansas."  Plaintiff's Complaint contains identical allegations compared to the MDL Master Long Form Complaint, on which discovery was conducted, and she has identified nothing unique to her claims to justify the burden of the proposed discovery.

## 2.    Plaintiff's Arguments[10]

Plaintiff's arguments fall into three general categories: 1) there are probative issues on which these witnesses have never been deposed;  2) there are issues specific to the facts and law in this case on which Plaintiff deserves an opportunity to take discovery; and 3) it has been six or seven years since any of these AMS corporate witnesses were deposed.

Plaintiff notes the depositions of Defendants' corporate witnesses were conducted six to seven years ago. But in the last six years, Plaintiff contends many changes have occurred, such as:  AMS added warnings to the Monarc product label and withdrew all of

---

[10] Unless otherwise noted, Plaintiff's position is taken from her Response, ECF No. 32.

its pelvic mesh devices from the marketplace; regulatory actions taken by the FDA on the Monarc; new testing and literature on the Monarc and Monarc complications; and numerous new articles discussing the risks of products like the Monarc. (ECF No. 32 at 3.)  To Plaintiff's knowledge, not a single AMS employee has ever been deposed on any of these changes.  And, Plaintiff also argues none of the previously-deposed witnesses have been asked any questions that track the requirements of Kansas law and the specific facts of this case.

As for Mr. Adams, because he was employed by AMS in 2011 when Plaintiff's device was implanted and was the head of Research & Development, Plaintiff wants to inquire of Adams regarding the testing conducted prior to her implant date, in addition to testing done prior to the onset of her injuries.  Plaintiff contends "Adams has already admitted to having personal knowledge of these relevant issues and has not been asked these (specific) questions. Mr. Adams left the company just before the Monarc product label was updated and he is likely to have information related to the lead up to this issue as he has admitted to serving on cross-functional teams at AMS related to the Monarc." (*Id*. at 4.)

As for Ms. Entenman's proposed testimony, Plaintiff argues the idea of a "feasible alternative design" to the mesh used in the Monarc device is relevant.  Under Kansas law, evidence of a "feasible alternative design" is considered when determining whether there was a design defect.  Here, Entenman was the product manager for the Elevate device, a pelvic mesh product newer than Monarc.  Because of this, Plaintiff contends she was involved with documenting risks with the older mesh products like Monarc.

C.     **Legal Standards**

Defendants' request to quash the subpoenas potentially implicates two Federal Rules of Civil Procedure:  Rule 26 regarding the scope of discovery and limits on discovery, and Rule 30 involving repeat depositions.  Each rule is addressed in turn.

1.     **Fed. R. Civ. P. 26**

Rule 26(b)(1) outlines the scope of discovery.  This rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Relevance at the discovery stage is broad,[11] and does not mean the information obtained would necessarily be admitted at trial.  If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant on its face,[12] the resisting party cannot rely upon a conclusory statement that the requested discovery is irrelevant.[13] It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the

---

[11] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc*., No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).
[12] *Speed Trac*, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007).
[13] *XPO Logistics Freight v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (D. Kan. Nov. 30, 2016) (citing *Speed Trac*, 2008 WL 2309011, at *3).

potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[14]  "Courts should lean towards resolving doubt over relevance in favor of discovery,"[15] and the court has broad discretion over discovery matters and to decide when a protective order is appropriate.[16] "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[17]

Under Rule 26(b)(2)(C), the court must limit discovery if: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(c) allows the court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  The Court then has broad discretion to utilize such a protective order to specifically define and/or

---

[14] *Id.*

[15] *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 6244155, at *2 (D. Kan. Dec. 3, 2013) (citing *Jackson v. Coach, Inc.*, No. 07–2128–JTM–DWB, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996)).

[16] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery ...") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[17] *Gilbert v. Rare Moon Media, LLC*, No. 15-mc-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing *Heartland Surgical Specialty Hosp.*, 2007 WL 2122437, at *5).

narrow the disclosure or discovery, including the terms, timing, and method of discovery.[18]

### 2.     Fed. R. Civ. P. 30

Under Rule 30(a)(2)(A)(ii), "a party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and . . . the deponent has already been deposed *in the case*."[19] "Courts generally disfavor repeat depositions,"[20] but courts must also "'be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'"[21]

In its determination of whether to grant leave under Rule 30(a)(2), the court must apply the standard for limiting the frequency and extent of discovery outlined in Rule 26(b)(2)(C), which states that discovery should be limited if the court determines that:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

---

[18] Fed. R. Civ. P. 26(c)(1)(A)-(H).

[19] Fed. R. Civ. P. 30(a)(2)(A)(ii) (emphasis added).  *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2019 WL 3532062, at *2 (D. Kan. Aug. 2, 2019).

[20] *Ast v. BNSF Ry. Co.*, No. 09-2519-EFM-DWB, 2011 WL 5080256, at *1 (D. Kan. Oct. 25, 2011) (quoting *Dixon*, 164 F.R.D. at 690 (internal quotation marks and other citations omitted)).

[21] *Id*. (quoting *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC,* No. 07–2388, 2008 WL 3895474, * 3 (D. Kan. Aug. 21, 2008) (quoting Fed. R. Civ. P. 26 advisory comm. comments to 1983 amend.).  *See also In re EpiPen*, 2019 WL 3532062, at *2 (internal citations omitted).

(iii)  the  proposed  discovery  is  outside  the  scope  permitted  by  Rule  26(b)(1)."[22]

The Court "will generally not require a deponent to appear for a second deposition absent some showing of a need or good reason for doing so."[23]  But the Court has "considerable discretion" when determining the limits of discovery.[24]

### D.    Discussion

As a threshold issue, the Court recognizes Defendants' certification that counsel met and conferred prior to the filing of this motion. (*See* Certification, ECF No. 29-1.) Therefore, the Court finds the parties met their burden to confer under D. Kan. R. 37.2.

Although Defendants argue they would be burdened by the taking of these two depositions, they do not support their argument with any specific demonstration of burden or expense.  Their primary arguments, though couched in "burden," actually appear to be these:  Adams' deposition would be duplicative of his prior deposition in the MDL, and Entenman's deposition would allegedly garner irrelevant information. Although Adams has been deposed before, and Defendants provided his deposition excerpts, those excerpts do not entirely answer Plaintiff's current questions. Additionally, Defendants have not met their burden to demonstrate undue burden for Entenman, given she has not been previously deposed.

An overarching consideration for this Court is the fact that Plaintiff has been permitted no discovery of her own in this action.  She has served no other written

---

[22] *See Ast,* 2011 WL 5080256, at *1 (applying Rule 26(b)(2) prior to the 2015 Rule amendments).
[23] *Foreclosure Mgmt. Co.*, 2008 WL 3895474, at *4.
[24] *Ast*, 2011 WL 5080256, at *2 (quoting *Foreclosure Mgmt. Co.,* 2008 WL 3985474, at *4).

discovery and requested no other depositions, to date.  (ECF No. 32 at 5.)  It is difficult for the Court to accept Defendant's contentions of burden when no discovery has been conducted by this Plaintiff in this particular case.  Although the Court understands Defendants produced significant discovery in the MDL, Plaintiff should not be disadvantaged by her inability to join the MDL.  And although Defendants contend "*most of the topics*" identified by Plaintiff for these witnesses have been previously covered in detail by multiple witnesses" (ECF No. 35 at 1, emphasis added)— "most" does not equal "all."

Although both parties cite to Fed. R. Civ. P. 30(a)(2)(A)(ii) to argue the standards applied to repeat depositions, the nuance in that rule is either disregarded or simply goes unnoticed.   Rule  30(a)(2)(A)(ii)  specifically  contemplates  the  repeat  deposition  of  a deponent who "has already been deposed *in the case*" (emphasis added).   Even if considerable discovery was completed in the MDL case—none has been conducted by Plaintiff in *this* case.   For these reasons, this Court has serious doubts whether Rule 30(a)(2)(A) applies under these facts, and whether Plaintiff truly even needs leave of Court to conduct these depositions.[25]

Even if Rule 30(a)(2)(A)(ii) did apply, the rule requires the Court "*must* grant leave [to take a second deposition] to the extent consistent with Rule 26(b)(1) and (2)." (emphasis added.)  Defendants have not convinced the Court the information sought is

---

[25] The other bases for a party requiring leave of court for depositions do not apply here.  Even if the parties have not stipulated to the depositions, Rule 30(a)(2)(A)(i) does not apply, as the depositions would not result in more than 10 depositions being taken; nor does Rule 30(a)(2)(A)(iii) apply, as Plaintiff is not seeking to take the deposition early due to either deponent's unavailability.

irrelevant to the parties' claims or defenses, and given the lack of discovery propounded in this case, finds the requested depositions proportional to the needs of the case. Therefore, the requested depositions comply with the scope of discovery under Rule 26(b)(1).   Additionally, if Plaintiff appropriately limits Adams' deposition to information not previously explored or obtained in his 2013 deposition, it will not be duplicative or cumulative under Rule 26(b)(2)(C)(i).

Under that same rule, Defendants have not shown that a deposition of Entenman would be duplicative because she has not been previously deposed.   Similarly, the deposition would not be cumulative if the questions Plaintiff asks have not been asked before.   Under Rule 26(b)(2)(C)(ii), it has not been shown that Plaintiff has had ample opportunity to obtain the information by discovery in this action, because Plaintiff has done no discovery.   Therefore, Defendants have not met their burden to demonstrate the requested depositions fall outside the scope of appropriate discovery under Rule 26(b)(1) and (2)(C).

The Court would be remiss, though, not to acknowledge Defendants' significant participation in discovery in the MDL, and their willingness to provide an abundance of available information to Plaintiffs in order to reduce the expenses and burdens of discovery in this case.   But even if this decision were a close call, the Court generally resolves doubts in favor of broad discovery,[26] particularly considering Plaintiff has not

---

[26] *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) ("Courts should lean towards resolving doubt over relevance in favor of discovery") (quoting *Folger*, 2013 WL 6244155, at *2 (other citations omitted).

taken any other depositions in this case.  Given Plaintiff's inability to pursue discovery thus far, the Court takes care "not to deprive [Plaintiff] of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case" according to her own theory.[27]

In the Court's discretion, Plaintiff must comply with some restrictions to ensure the depositions fall within the scope of discovery.  Mr. Adams' deposition is narrowed to information not previously obtained in his 2013 deposition and directly relevant to the current claims and defenses.  This will ensure the deposition is neither cumulative nor duplicative, and any burden on Adams should be minimized.[28]  Additionally, Plaintiff must make every effort to lessen the travel expense or burden to both witnesses, such as obtaining depositions by video means, or similar accommodations.

In her briefing, Plaintiff offered to restrict each deposition to four hours.  (ECF No. 32 at 5.)  During the June 16, 2020 motion hearing, the Court announced it would restrict the depositions of Mr. Adams and Ms. Entenman to four hours each. (Transcript, ECF No. 55 at 48-49.)  However, on July 15, 2020, the Court held a discovery hearing at the parties' request.  Although the informal discussions during that hearing did not culminate in a written order, the undersigned notes in light of those discussions, the duration of the depositions was verbally extended by the undersigned Magistrate Judge to

---

[27] *Foreclosure Mgmt. Co.*, 2008 WL 3895474, at *3 (quoting Fed.R.Civ.P. 26 advisory committee's note to 1983 amendments.)
[28] *See Dixon*, 164 F.R.D. at 692; *Foreclosure Mgmt. Co.*, 2008 WL 3895474, at *5 (allowing second deposition on new issues "directly relevant to the claims and defenses" because it would not be cumulative or duplicative).

six hours each. (*See* Order setting conference, ECF No. 45; and Minute Entry, ECF No. 46.)

**E.     Conclusion**

For the reasons outlined above, **IT IS THEREFORE ORDERED** that Defendants' Motion to Quash the Subpoenas to Matt Adams and Kristy Entenman (**ECF No. 29**) is **DENIED**, subject to the restrictions set forth herein.

As stated in the Court's prior order (ECF No. 43), the Phase I fact discovery period is extended to August 7, 2020. At this time, the Phase II (expert) and Phase III (pretrial/trial) deadlines remain as previously set in the order amending the schedule (ECF No. 34).

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 23rd day of July 2020.


                                        s/ Gwynne E. Birzer
                                        GWYNNE E. BIRZER
                                        United States Magistrate Judge